IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

OSCAR CHAPMAN,

                Plaintiff,

v.                                                         CIVIL ACTION NO.   2:20-cv-00725

DR. CHARLES LYE, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiff's *First Amended Complaint* (Document 47), *Defendant Brian Penick, Charles Johnston, Charles Moles, and Chris Wilson's Motion to Dismiss the Amended Complaint* (Document 73), *Defendant Brian Penick, Charles Johnston, Charles Moles, and Chris Wilson's Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint* (Document 74), *Defendant Russell Parker, Jr.'s Motion to Dismiss the Amended Complaint* (Document 87), *Defendant Russell Parker, Jr.'s Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint* (Document 88), and the *Plaintiff's Response in Opposition to Defendants Penick, Johnston, Moles, Wilson, and Parker's Motions to Dismiss* (Document 91). For the reasons stated herein, the Court finds that the motions to dismiss should be denied.

1

## FACTUAL ALLEGATIONS

The Plaintiff, Oscar Chapman, initiated this action with a pro-se *Complaint* (Document 4) filed on November 3, 2020. His amended complaint was filed with the assistance of counsel on June 15, 2021, and is now the operative pleading. He named the following Defendants: Dr. Charles Lye, Wexford Medical, Captain Brian Penick, Officer David Ewing, Sergeant Jesse Smith,[1] Officer Charles Johns[t]on, Officer Charles Moles, Lieutenant Chris Wilson, and Officer Russell Parker, Jr.

Mr. Chapman was in the custody of the West Virginia Department of Corrections and Rehabilitation (WVDCR) at all relevant times. On March 7, 2018, while housed at Western Regional Jail, he was transported to a hospital for neurosurgery to remove a brain tumor. On or around June 28, 2018, he was transferred to Mt. Olive Correctional Complex. He was moved to a segregation unit on or about October 25, 2018, and placed in a holding cell while awaiting examination in the Medical Unit.[2] Defendants David Ewing, Charles Johnston, Charles Moles, and Chris Wilson formed an extraction team supervised by Brian Penick and video-taped by Derek McKinney. Mr. Chapman repeatedly requested to speak with an officer, but they refused to speak with him or engage in de-escalation techniques. The "extraction team approached Mr. Chapman's cell yelling 'don't resist'" but gave him "no instructions about where he should be in his cell, how he should position his body or how else he could comply." (Am. Compl. at ¶ 24.) "[H]e put his hands above his head, hoping that this action of surrender would deter the extraction team from using violence against him." (*Id.* at ¶ 25.) Instead, the extraction team entered the

---

1 The Plaintiff voluntarily dismissed Defendant Jesse Smith. (Documents 90 & 93.)
2 The Amended Complaint indicates that this was a routine procedure prior to placing an inmate in segregation.

cell and took him to the ground without giving him any instructions.  The officers hit and kicked him when he was face-down on the ground, offering no resistance.

The officer taking video did not enter the cell and the video does not clearly show what happened, but "Mr. Chapman can be heard desperately telling the officers that he has a brain tumor."  (*Id.* at ¶ 30.)  The Defendant officers injured Mr. Chapman's finger and head and broke his glasses.  He suffered pain, dizziness, blurred vision, and sometimes had difficulty standing as a result of the attack.  He was taken to the medical unit after the beating.

In the segregation unit later in the day, Mr. Chapman had blurred vision and dizziness, and was concerned that the beating had caused further injury related to his recent brain surgery.  He called to Defendant Parker, who ignored him, then kicked his cell door in an attempt to get his attention.  Mr. Parker sprayed Oleoresin Capsicum (OC) into Mr. Chapman's cell through the food slot without giving him any instruction or responding to his call for help.  Mr. Chapman has asthma, and the OC spray caused difficulty breathing and burning to his skin and eyes.  Mr. Chapman alleges the following causes of action as to the Correctional Officer Defendants:  Count One – Violations of the United States Constitution: Excessive Force (42 U.S.C. § 1983) and Count Three – Assault and Battery.

In addition to his allegations against the Correctional Officer Defendants that are the subject of the pending motions to dismiss, Mr. Chapman alleges that Defendants Lye and Wexford failed to appropriately treat and monitor his brain tumors, contributing to more severe tumor growth.  Following another brain surgery in November 2020, he has suffered slurred speech and relies on a walker or wheelchair.  His outside doctor ordered physical therapy to help him regain the use of his legs, but Defendants Lye and Wexford have not provided him with such therapy.

In Count Two of the amended complaint, he alleges Deliberate Indifference to Serious Medical Need in violation of the United States Constitution, pursuant to 42 U.S.C. § 1983, as to Defendants Lye and Wexford.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.  *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements."  *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  However, statements of bare legal conclusions "are not entitled to the

assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

**DISCUSSION**

The Defendants[3] argue that the Plaintiff failed to exhaust his administrative remedies with respect to the allegations against the Correctional Officer Defendants. They argue that the grievance forms he attached to his initial complaint show that a grievance related to the cell

---

3 Although Defendant Russell Parker, Jr., submitted a separate motion to dismiss, his motion presents similar arguments, and the Court will consider the motions jointly.

extraction "was accepted at the first level but rejected at both the second and final level," and that the forms attached to his initial complaint do not include a grievance related to the OC spray incident. (Def.s' Mem. at 3.) They contend that "[r]ejected grievances do not exhaust the administrative remedy process." (*Id.* at 7.)

The Plaintiff argues that a motion to dismiss based on the affirmative defense of failure to exhaust administrative remedies is premature. He notes that the grievance forms are not attached to or referenced in the amended complaint that is the operative pleading and contends that they should not be considered at this stage. Because a failure to exhaust administrative remedies is not apparent on the face of the amended complaint, he contends that the motion to dismiss should be denied. He further argues that discovery is necessary to ensure that all grievances and appeals are presented. Finally, he argues that even if the Court considers the previously attached grievance forms, they are adequate to exhaust his administrative remedies because they "served all of the functions intended by the PLRA [Prison Litigation Reform Act]." (Pl.'s Resp. at 10.) He argues that his grievances were improperly rejected on grounds not supported by WVDCR policies, and "the CO Defendants seek to bar [him] from being able to raise his claims because he was barred from exhausting his administrative remedies on a basis not supported by the DCR's own policy." (*Id.* at 13.)

The PLRA contains the following exhaustion provision: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court explained the purpose of the exhaustion requirement: "Requiring exhaustion allows prison officials an opportunity to

resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

The Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216. If the allegations in the complaint are sufficient to establish that affirmative defense, it "may be the basis for dismissal for failure to state a claim." *Id.* at 215. As an affirmative defense, "inmates need not plead exhaustion, nor do they bear the burden of proving it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Whether an inmate properly exhausted administrative remedies under the PLRA is determined based on whether he or she complied "with prison grievance procedures," as "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

Even if the Court considers the grievance forms attached to the now-superseded pro-se complaint, the Defendants have presented no evidence that those forms are the extent of the administrative record with respect to the Plaintiff's claims. They presented no evidence regarding the WVDCR's grievance process by which the Court could evaluate the adequacy of the Plaintiff's grievances. Such evidence could not properly be presented in a 12(b)(6) motion—yet without it, the Court cannot resolve the question of whether the Plaintiff properly exhausted administrative remedies. Therefore, the Court finds that the issue is not suited to resolution on a motion to dismiss.[4] The applicability of the affirmative defense is not readily apparent from the face of the

---

4 The Court notes that the Fourth Circuit has affirmed that, in rare instances, a defendant may raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss, and a court's dismissal may be upheld

7

amended complaint or from the combination of the amended complaint and the documents previously submitted by the Plaintiff. Accordingly, the motions to dismiss must be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant Brian Penick, Charles Johnston, Charles Moles, and Chris Wilson's Motion to Dismiss the Amended Complaint* (Document 73) and *Defendant Russell Parker, Jr.'s Motion to Dismiss the Amended Complaint* (Document 87) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: October 18, 2021

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

provided that the plaintiff had an opportunity to respond to the exhaustion issue. *Custis v. Davis*, 851 F.3d 358, 362 (4th Cir. 2017) (holding that courts cannot raise the issue, require plaintiffs to demonstrate exhaustion, and dismiss sua sponte if exhaustion is not established). However, the burden remains on a defendant to establish an affirmative defense, and it may be resolved in a motion to dismiss only if the defense is apparent on the face of the complaint. It is not incumbent upon the Plaintiff, whose amended complaint does not address his grievances at all, to prove that he *did* exhaust administrative remedies in response to a motion to dismiss.